UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 07-26-GWU

CORINE HELVEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

07-26  Helvey

>
> Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

07-26  Helvey

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

07-26  Helvey

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately

6

portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Corine Helvey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of depression, anxiety, pancreatitis, colitis, and irritable bowel syndrome.  (Tr. 23).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she could lift 20 pounds occasionally and 10 pounds frequently, could sit six hours in an eight-hour day (no more than two hours without interruption), and could stand and walk four hours in an eight-hour day (no more than two hours without interruption), and also had the following additional non-exertional restrictions.  (Tr. 451).  She: (1) could not crouch, perform overhead work, or bend at the waist greater than 60 degrees; (2) could not drive or work around hazards such as unprotected heights, or unguarded moving machinery; (3) was limited to simple, repetitive tasks in a stable work environment with little or no change, at no more than a moderate pace; and (4) could not do assembly line work or have contact with the general public.

07-26 Helvey

(Tr. 451-2). The VE responded that because of the restrictions on standing, the plaintiff would be limited to sedentary jobs, and at that level she could perform the jobs of bench assembler, which did not require production quotas, with 449 jobs "locally" and 57,220 jobs nationally, and sedentary laborer, with 322 jobs "locally" and 40,461 jobs nationally. (Tr. 452). Her definition of "local" was not provided.[1] The ALJ accepted the VE's testimony, although ultimately concluding that the plaintiff would be limited to lifting 10 pounds occasionally and 5 pounds frequently, which he opined was consistent with the sedentary jobs found by the VE. (Tr. 24-5).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. There is an additional issue in that the plaintiff's Date Last Insured (DLI) was December 31, 2003, meaning that she needed to establish disability prior to this date in order to be entitled to DIB. Her SSI application is not affected.

On appeal, the plaintiff challenges only the hypothetical mental restrictions. Finding that the mental restrictions are not supported by substantial evidence, the court agrees that a remand is necessary on this issue.

Anxiety and depression were among the plaintiff's original grounds in applying for disability (Tr. 78), and, as previously noted, they were found to be

---

[1] Since the "local" area could have been anything, it is impossible to say whether the number of jobs given represents a significant number locally. The total of less than 100,000 national level jobs is not particularly impressive.

"severe" impairments. Office notes from the plaintiff's treating family physician, Dr. Linda Gooch, reflect a diagnosis of depression and a prescription for an anti-depressant medication. (Tr. 142). Depression and anxiety also appear to have been an issue at a visit to an unknown physician at the St. Elizabeth Medical Center in January, 2003, when "multiple somatic complaints" were noted. Anti-depressant and anti-anxiety drugs were prescribed, and the plaintiff was referred to a Comprehensive Care Center (CCC) for mental health treatment. (Tr. 160). It had also been noted that although the plaintiff was using Amitripyline for sleep, she probably "gets additional psych benefit [with] depression and emotional lability." (Tr. 159). Dr. Paul Guenthner, a gastroenterologist, treated the plaintiff on referral from Dr. Gooch in March, 2004, for complaints of epigastric pain, nausea, vomiting, lower abdominal pain, and diarrhea, among other complaints. (Tr. 383). After a physical work-up over the next several months, which included a normal colonoscopy, Dr. Guenthner noted that the plaintiff was seeing a psychologist for anxiety and depression, which conditions he thought played a role in her symptoms of irritable bowel syndrome, and added that in his opinion "I think the greatest disability is due to her psychiatric disorder and not to any organic GI pathology." (Tr. 391). Other than Dr. Gooch's diagnosis of depression and a portion of Dr. Guenthner's conclusion (not including his use of the word "disability"), none of this is mentioned in the ALJ's decision.

07-26 Helvey

The plaintiff apparently sought treatment at the NorthKey Community Care mental health clinic beginning in October, 2003, where she complained of depression, anxiety, and chronic pain secondary to pancreatitis. (Tr. 225). In addition to physical problems, she described a history of abusive relationships, and stated that, although she was compliant with the medications prescribed by Dr. Gooch, she felt they had never been very helpful. (Tr. 225-6). She had not been able to work since an operation had caused damage to her pancreas, and had difficulty with sleeping, as well as nausea. (Tr. 227). All of the treatment notes from 2003 are signed by Margaret L. Leonhard, a licensed psychological associate. (Tr. 225-36).[2] In June, 2004, Leonhard completed a clinical assessment which contained a diagnosis of a dysthymic disorder and a current Global Assessment of Functioning (GAF) score of 58 (Tr. 302). A GAF score in this range would reflect "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. However, in August, 2005, a registered nurse, Barb Wofford, who the plaintiff described as one of her counselors, prepared a mental medical assessment form stating that the plaintiff suffered from severe anxiety, could not cope well with stress, and could not remember and organize due to a continual high level of anxiety. (Tr. 392-4). At the administrative hearing in November, 2005, counsel for the plaintiff noted that he was having difficulty in that

---

[2]The spelling is given as "Leonhardt" by the plaintiff's counsel and the ALJ (Tr. 22, 399), although the signature does not appear to have a "t" (Tr. 401).

07-26 Helvey

residual functional capacity assessment forms sent to NorthKey were being signed by nurse practitioners, and he realized that under the Commissioner's regulations, the reports had to be signed by a psychiatrist or psychologist. (Tr. 447). Subsequent to the hearing, Nurse Wofford's assessment was signed by Margaret Leonhard and resubmitted. (Tr. 399-401).

From the evidence presented, it appears that Leonhard was an acceptable medical source under 20 C.F.R. Section 404.1513(a)(2), and both the plaintiff's testimony that she saw her fairly regularly (Tr. 422, 424) as well as what treatment notes exist suggest that she was also a treating source. Opinions from treating sources are subject to the procedural requirement in 20 C.F.R. Section 404.1527(d)(2) that the Commissioner will "always give good reasons" for the weight given to the treating source's opinion. The Sixth Circuit has noted that "it is an elemental principle of administrative law that agencies are bound to follow their own regulations" and "[a] court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-6 (6th Cir. 2004). In the present case, the ALJ reported the Wofford/Leonhard restrictions without comment. (Tr. 21-2). No specific rationale was ever given for the weight accorded to the opinion, and, as the plaintiff points out on appeal, no rationale was

11

given for the mental restrictions adopted.[3]  While the Commissioner maintains that it was reasonable to rely on the opinions of the state agency sources given the GAF of 58, this rationale was actually not provided by the ALJ in his decision.  Given that the administrative decision contains no rationale for the rejection of the treating source, the court cannot say that the treating source opinion was so patently deficient that the Commissioner could not possibly credit it.  Notably, the opinions by Wofford and Leonhard came considerably later than the GAF score, as did the comments by other physicians, cited earlier, concerning the plaintiff's mental problems.  In particular, the conclusion of Dr. Guenthner after several months of treatment that the plaintiff's psychiatric disorder was her "greatest disability" was made several months later.  (Tr. 391).

In addition, the court notes that the ALJ improperly discounted the credibility of the plaintiff's mental complaints because she did not seek treatment for anxiety and depression for almost four years after she stopped working and because there were gaps in treatment.  The ALJ commented that "if anxiety/depression were

---

[3]While the mental restrictions in the hypothetical question are generally, albeit not precisely, consistent with opinions given by non-examining state agency psychological reviewers, Ed Ross and Laura Cutler, who reviewed the record in late 2003 and early 2004, respectively (Tr. 256-8, 282-4), neither source had access to the entire record and never had the opportunity to explain why their opinions would differ from the treating source.  See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  The ALJ did explicitly base his conclusion that the plaintiff did not meet the "B" criteria of the Commissioner's Listings of Impairment 12.04 and 12.06 on the opinions of Ross and Cutler, but the "B" criteria do not equate to specific functional restrictions.  Social Security Ruling 96-8p, p. 4.

07-26  Helvey

disabling as of her onset date, it is odd that she would have waited so long to seek treatment."  The Sixth Circuit has noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).  Therefore, this is not sufficient grounds to discount the plaintiff's credibility.

Finally, the VE's testimony, as noted earlier, came in response to a question assuming that the hypothetical individual was capable of lifting 20 pounds occasionally and 10 pounds frequently.  The ALJ assumed that the sedentary level jobs described could be performed by a person limited to lifting 10 pounds occasionally and 5 pounds frequently, but it is not clear that frequent lifting of no more than 5 pounds is within the definition of sedentary work.  See Social Security Ruling 83-10, p. 5.

The decision will be remanded for further consideration.

This the 16th day of January, 2008.



Signed By:

G. Wix Unthank

United States Senior Judge

13